UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


RONNELL JASON LEBERRY        ]
        Petitioner,          ]
                             ]
v.                           ]        No. 3:10-0624
                             ]        Judge Sharp/Knowles
WARDEN RICKY BELL            ]
        Respondent.          ]


To: Honorable Kevin H. Sharp, District Judge


**R E P O R T   A N D   R E C O M M E N D A T I O N**

By an order (Docket Entry No.62) entered September 2, 2011,
the Court referred this action to the Magistrate Judge "for further
proceedings under Rule 8(b), Habeas Corpus Rules, 28 U.S.C. §
636(b)(1)(B), and Rule 72.03, Local Rules of Court."

Presently before the Court are respondent's Answer (Docket
Entry No.60) to the petitioner's amended petition (Docket Entry
No.50) for writ of habeas corpus, petitioner's Reply (Docket Entry
No.61) to the respondent's Answer, and the expanded record.

## I. Background

The petitioner is an inmate at the Riverbend Maximum Security
Institution in Nashville. Through counsel, he brings this action
pursuant to 28 U.S.C. § 2254 against Ricky Bell, Warden of the
facility, seeking a writ of habeas corpus.

On February 28, 2001, a jury in Montgomery County found the petitioner guilty of extortion, aggravated assault, especially aggravated kidnapping and two counts of facilitation to commit aggravated rape. Docket Entry No.36-1 at pgs.71-75. For these crimes, he received an aggregate sentence of thirty two and one half (32 ½) years in prison. *Id.* at pgs.92-96.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the convictions. However, it was found that the trial judge had improperly enhanced the petitioner's sentence. <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004). Consequently, the petitioner's effective sentence was reduced to twenty eight (28) years in prison. Docket Entry No.36-9. The Tennessee Supreme Court later denied the petitioner's application for additional review. Docket Entry No.36-11.

The petitioner then filed a *pro se* petition for state post-conviction relief in the Circuit Court of Montgomery County. Docket Entry No.36-12 at pgs.6-43. Following the appointment of counsel, an amendment of the petition, and an evidentiary hearing, the trial court denied the application for post-conviction relief. *Id.* at pg.76.

On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. Docket Entry No.36-16. Once again, the Tennessee Supreme Court rejected the petitioner's request for further discretionary review. Docket Entry No.36-18.

## II. Procedural History

On May 3, 2010, the petitioner initiated the instant action with the filing of a *pro se* petition (Docket Entry No.1) for federal habeas corpus relief.[1] The petition sets forth seven claims for relief. These claims include :

1) trial counsel was deficient for failing to request a jury instruction regarding accomplice testimony;[2]

2) prosecutorial misconduct occurred when the prosecutor "used false speculative testimony and did not rehabilitate or correct it when it appeared";

3) the trial judge denied the petitioner due process when he
    a) refused to recuse himself after witnessing the petitioner assault his previous attorney;
    b) ordered the petitioner to wear shackles during the trial;
    c) failed to instruct the jury as to accomplice testimony;
    d) refused to recuse the prosecutor who witnessed the petitioner assault his previous attorney; and

4) the evidence was insufficient to support the convictions.

---

[1] The petition was stamped by the Clerk's Office as filed on May 11, 2010, the date of its receipt. *See* Docket Entry No.1 at pg.1. However, a pleading from a prisoner is considered filed on the date that it was given to prison officials for posting. Houston v. Lack, 487 U.S. 266 (1988). In this case, petitioner avers that the petition was placed in the prison postal system on May 3, 2010. Docket Entry No.1-1 at pg.23. That date, therefore, is deemed to be the date of filing.

[2] At trial, the petitioner was represented by Edward DeWerff, a member of the Montgomery County Bar.

Upon its receipt, the Court reviewed the petition and determined that the petitioner had stated a colorable claim for relief. Accordingly, by an order (Docket Entry No.7) entered June 30, 2010, the respondent was directed to file an answer, plead or otherwise respond to the petition.

The respondent complied with this order by filing an Answer (Docket Entry No.35) to the petition. After the Answer was filed, the petitioner submitted an amended brief (Docket Entry No.38) alleging additional claims.

Counsel was then appointed to represent the petitioner. Docket Entry No.42. In May, 2011, appointed counsel filed an amended petition (Docket Entry No.50) for habeas corpus relief. The amended petition incorporates those claims already presented in the original petition and the amended brief with new claims. The additional claims set forth in the amended brief and the amended petition include :

> 5)  trial counsel was deficient because he
>> a) failed to effectively cross examine the victim;
>> b) failed to conduct a meaningful adversarial challenge to the prosecutor's case;
>> c) neglected to raise the issue of double jeopardy;
>> d) failed to object to the prosecutor's closing argument;
>> e) did not object to the introduction of misleading photos as trial exhibits;
>> f) failed to object to testimony from Ms. Clinton and Dr. Doty;
>> g) neglected to give an opening statement;
>> h) failed to cross examine several

4

prosecution witnesses;

    i) did not call six defense witnesses who had been subpoenaed and were available to testify;

    j) abandoned petitioner's claim of innocence to the facilitation charges in his closing argument;

    k) would not allow the petitioner to testify;

    l) neglected to object to the racial composition of the jury;

    m) the cumulative effect of counsel's errors served to deprive the petitioner of the effective assistance of counsel;

6) appellate counsel was ineffective for failing "to raise or properly frame meritorious claims, including but not limited to, the ineffectiveness of counsel";[3]

7) misconduct occurred when the prosecutor
    a) allowed Dr. Doty to read a redacted victim's statement;
    b) changed the theory of his case as it related to Ms. Grant;
    c) vouched for Ms. Grant as a witness;
    d) stated that defense witness Clayton "was not a good citizen".

An order (Docket Entry No.53) was entered directing the respondent to file an answer, plead or otherwise respond to the petition as amended. Presently pending before the Court are the respondent's Answer (Docket Entry No.60) to the petition as amended, and the petitioner's Reply (Docket Entry No.61) to this Answer.

Having carefully considered these pleadings and the expanded record, it appears that an evidentiary hearing is not needed in

---

[3] On direct appeal, the petitioner was represented by Mark Olson, a member of the Montgomery County Bar.

this matter. *See* <u>Smith v. United States</u>, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief).

## III. Analysis of the Claims

### A) Procedurally Defaulted Claims

A petition for writ of habeas corpus will not be considered unless the petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1)(A); <u>Hamm v. Saffle</u>, 300 F.3d 1213,1216 (6th Cir.2002). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine that promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. <u>Granberry v. Greer</u>, 107 S.Ct. 1671,1674-1675 (1987). Thus, as a condition precedent to seeking federal habeas corpus relief, each of petitioner's claims must have been fairly presented to the state courts. <u>Rhines v. Weber</u>, 544 U.S. 269,274 (2005). Once the petitioner's federal claims have been presented to the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider them. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838,842 (1999).[4]

---

[4] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. <u>Adams v. Holland</u>, 324 F.3d 838 (6th Cir.2003).

Several of the petitioner's federal claims have never been raised in the state courts for consideration. These claims include all of the prosecutorial misconduct claims (Claim Nos.2,7a-d) and many of the ineffective assistance claims (Claim Nos.5a-h,5k and 6). *See* Docket Entry No.36-7 (direct appeal); Docket Entry No.36-14 (post-conviction).

At this late date, though, it appears that state court remedies are no longer available for those claims that have not yet been properly exhausted. *See* Tenn. Code Ann. § 40-30-102(a) and (c). Thus, by way of procedural default, the petitioner has technically met the exhaustion requirement with respect to these claims. <u>Alley v. Bell</u>, 307 F.3d 380,385 (6th Cir.2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas corpus review).

The exhaustion of a claim via procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review of those issues, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged

constitutional violations. <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. <u>Lundgren v. Mitchell</u>, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. <u>United States v. Frady</u>, 456 U.S. 152, 170-72 (1982).

In this regard, the petitioner has shown neither cause for his failure to raise these federal claims in the state courts nor any prejudice arising from them. Therefore, his procedural default of these claims is unexcused and will not support an award of habeas corpus relief.

The petitioner has additionally alleged that the trial judge denied him due process when he neglected to instruct the jury regarding accomplice testimony (Claim No.3c). This claim was raised in the state courts during the petitioner's direct appeal and was exhausted as a question of state rather than federal law. *See* Docket Entry No.36-7 at pg.23. Federal habeas corpus relief is only

available to remedy violations of federal law. 28 U.S.C. § 2254(a).
The state courts were never offered the opportunity to determine
whether the trial judge's failure to instruct as to accomplice
testimony was violative of federal law.

To properly satisfy the exhaustion requirement, a federal
claim must be fairly presented to every level of the state court
system for consideration. <u>Doctor v. Walters</u>, 96 F.3d 675, 678 (3rd
Cir. 1996). The petitioner has failed to present this claim to the
state courts as a violation of federal law. As noted above, state
court remedies for this federal claim are no longer available. The
petitioner has shown no cause and prejudice arising from his
failure to present this federal claim to the state courts in a
timely manner. Thus, this claim is likewise insufficient to support
an award of habeas corpus relief.

**B) Untimely Claims**

A prisoner in custody pursuant to the judgment of a state
court has one year from the "date on which the judgment became
final by the conclusion of direct review or the expiration of the
time for seeking such review" in which to file his claims for
federal habeas corpus relief. 28 U.S.C. § 2244(d)(1)(A).[5] The time
for seeking direct review has been held to include the ninety (90)

---

[5] 28 U.S.C. § 2244(d) actually provides that the limitation
period begins to run from the latest of four dates, one of which
is the date the judgment became final. The other three potential
dates do not apply in this case.

day period during which a criminal defendant can petition the United States Supreme Court for a writ of certiorari. <u>Isham v. Randle</u>, 226 F.3d 691, 695 (6th Cir. 2000).

The petitioner was found guilty on February 28, 2001. The direct review of his convictions by the state courts was concluded on October 17, 2005, the date the Tennessee Supreme Court denied petitioner's application for discretionary review. Docket Entry No.36-11.

Prior to the conclusion of the ninety (90) day period during which the petitioner could have sought a writ of certiorari in the United States Supreme Court, the petitioner filed a petition for state post-conviction relief. Docket Entry No.36-12 at pgs.6-43. This filing had the effect of tolling the start of the one year limitation period for as long as the collateral proceedings remained pending in the state courts. 28 U.S.C. § 2244(d)(2).

The petitioner's post-conviction proceedings concluded in the state courts on June 15, 2009, the date the Tennessee Supreme Court denied his application for further post-conviction review. Docket Entry No.36-18. Thus, the petitioner had one year from that date, or until June 15, 2010, in which to file his claims for federal habeas corpus relief.

The instant action was filed on May 3, 2010, prior to the expiration of the limitation period. Consequently, all claims contained in the petitioner's original *pro se* petition are timely.

10

The amended brief (Docket Entry No.38)(filed January 21, 2011) and the amended petition (Docket Entry No.50)(filed May 6, 2011), however, contain new claims that were not filed within the limitation period. Thus, these claims will only be considered timely if they relate back to the claims filed in the original petition. Rule 15(c)(1)(B), Fed.R.Civ.P. (A claim relates back to the date of the original filing if it arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading).

A late filed claim does not relate back to the date of the original filing, and thereby avoid the limitation period, if it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading. Mayle v. Felix, 545 U.S. 644 (2005). The late filed claims involve instances of alleged deficient representation. More specifically, these claims include counsel's failure to call subpoenaed witnesses (Claim No.5i), counsel's abandonment of petitioner's claim of innocence to the facilitation charges during closing argument (Claim No.5j), counsel's failure to object to the racial composition of the jury (Claim No.5l) and the cumulative effect of counsel's errors (Claim No.5m). In the original petition, the petitioner does allege that counsel was ineffective. However, that claim is based upon counsel's failure to request specific jury instructions. It has nothing to do with what witnesses to call,

11

closing argument or the racial composition of the jury.

Accordingly, the undersigned finds that the petitioner's late filed claims do not relate back to the filing of the original habeas corpus pleading. These claims, therefore, are untimely and will not support an award of habeas corpus relief.

**C) Fully Exhausted Claims**

The petitioner's remaining claims, i.e., counsel's failure to request jury instructions regarding accomplice testimony (Claim No.1), errors by the trial judge that resulted in the deprivation of due process (Claim Nos.3a,3b and 3d), and the sufficiency of the evidence (Claim No.4), were fully exhausted in the state courts.

When a federal habeas corpus claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Nevers v. Killinger, 169 F.3d 352, 357 (6th Cir.1999). In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. In order to obtain the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct

governing legal principle involved but unreasonably applied that principle to the facts of the case. <u>Williams v. Taylor</u>, 120 S.Ct. 1495,1523 (2000). In short, state court judgments must be upheld unless, after the closest examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated. *Id.* at 120 S.Ct. 1511.

### i) Sufficiency of the Evidence

The petitioner was found guilty of extortion, aggravated assault, especially aggravated kidnapping and facilitation to commit aggravated rape. He claims that the evidence was not sufficient to support these convictions (Claim No.4).

The right to due process guaranteed to us by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as that quantum of "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.* at 443 U.S. 319.

In the evening of May 14, 2000, the victim returned to her apartment after a visit with her mother. Docket Entry No.36-2 at pg.29. Before entering the apartment, she was confronted by Demetris Grant, a co-worker, and Grant's boyfriend, the petitioner.

Grant was upset with the victim for not giving her a ride to work the day before.[6] *Id.* at pg.32.

The pair followed the victim into her apartment. Grant began to hit and kick the victim. *Id.* at pgs.32-33. Someone told her to undress and Grant threatened her with a knife. *Id.* at pgs.33-34. According to the victim, "... I know they took turns, but they heated up a fork over the stove and burnt my breasts and my vagina." *Id.* at pgs.35,42-43. Grant testified that the petitioner then twice inserted a mop handle into the victim's vagina. *Id.* at pg.190. The pair made the victim author a note (Docket Entry No.36-6 at pg.2) saying that she owed Grant $250 and that the pair could take her automobile as collateral until the debt was paid. *Id.* at pg.48. The victim was then instructed to get dressed because they were driving her to Grant's apartment. *Id.* at pg.51.

The victim rode with the petitioner while Grant took another vehicle. *Id.* at pg.53. When they reached the parking lot for Grant's apartment building, the "petitioner yelled out the window if anyone wanted their dick sucked or to have oral sex, to come there." *Id.* at pg.54. Some men from the apartment complex gathered around the car and the group moved into Grant's apartment. *Id.* at pg.55.

Once inside, the victim was taken to the living room where she

---

[6] Testimony revealed that the victim had slept with the petitioner on a prior occasion, which may have also inflamed Grant. Docket Entry No.36-2 at pg.66.

was again instructed to remove her clothes. *Id.* She was forced to give the group of men oral sex. At least one of the men had intercourse with the victim. *Id.* at pg.204. While this took place, Grant and the petitioner were sitting in the kitchen smoking marijuana. *Id.* at pg.202. The victim left the living room and vomited in the kitchen. *Id.* at pg.58. She was made to clean up the mess. *Id.* After the group of men had been satisfied, the victim was ordered to do jumping jacks and sit-ups while she was still naked. *Id.* at pg.60. She was then told to get dressed and was allowed to leave. *Id.* at pgs.60-61.

The bulk of the prosecution's case came from the testimony of the victim and the petitioner's accomplice, Demetris Grant. However, there was evidence introduced to corroborate their testimony. The victim's bra was recovered from the floor of her apartment and the apartment smelled of "fresh paper burned". *Id.* at pgs.84-85. A neighbor reported hearing the victim "screaming bloody murder". *Id.* at pg.273. In addition, police found a knife matching the description provided by the victim at her apartment. *Id.* at pg.113. A mop was recovered from Grant's apartment where the victim's car was found parked outside. *Id.* at pg.107. A burnt fork was discovered outside the victim's apartment. *Id.* at pg.102. One of Grant's neighbors testified that she heard the petitioner holler from the parking lot "that he had a white girl that wanted to give somebody head" and that the victim entered Grant's apartment with

the petitioner. *Id.* at pgs.115-120. Medical testimony confirmed that the victim's injuries were consistent with her testimony.

Aggravated rape is the unlawful sexual penetration of a victim by a defendant who causes the victim bodily injury. Tenn. Code Ann. § 39-13-502(a)(2). Facilitation to commit aggravated rape requires proof showing that the petitioner, knowing that another intends to commit aggravated rape, furnished substantial assistance in the commission of the felony. Tenn. Code Ann. § 39-11-403(a).

The evidence shows that either one or both of the petitioner and his accomplice, Demetris Grant, twice inserted a mop handle into the victim's vagina. This constitutes an aggravated rape. There is no question that the petitioner was present at the scene when this happened. Even if the petitioner took no active role in the rape itself, there was more than ample evidence showing that he furnished substantial assistance in the commission of the crime.

The petitioner was also convicted of aggravated assault. This crime requires a showing that the petitioner assaulted the victim, causing her serious bodily injury. Tenn. Code Ann. § 39-13-102.

The victim testified that Grant and the petitioner "took turns" heating up a fork over the stove and burning her breasts and vagina. The discovery of a burnt fork and medical testimony confirmed that the victim's injuries were serious and were consistent with her testimony. There was, therefore, sufficient evidence to support this conviction.

The petitioner was found guilty of extortion. An individual commits extortion when he uses coercion upon another person with the intent .... to obtain property. Tenn. Code Ann. § 39-14-112(1). The victim testified that Grant and the petitioner threatened her life in order to get her to write a note acknowledging a $250 debt and giving her car to the pair as collateral until the debt was paid. The note was entered into evidence. This was sufficient for the jury to convict the petitioner of extortion.

Finally, the petitioner believes that the evidence was not sufficient to support a conviction for especially aggravated kidnapping. Under Tennessee law, especially aggravated kidnapping is defined as the knowing removal or confinement of another unlawfully so as to interfere substantially with the other's liberty .... where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-302,305.

The evidence showed that the petitioner and his accomplice threatened the victim's life with a knife. She was held captive by the pair in her apartment while they tortured her with a burnt fork. She was then transported by the petitioner against her will to Grant's apartment where, at the petitioner's invitation, a group of strangers raped her. Medical evidence supported a finding that the victim had been severely injured as a result of the petitioner's actions. Accordingly, the undersigned finds no merit in this claim.

**ii) Trial Judge's errors - Due Process violations**

The petitioner claims that the trial judge erred, resulting in violations of his right to due process. More specifically, the petitioner argues that the trial judge should have recused himself and the prosecutor after they witnessed the petitioner assault one of his attorneys (Claim Nos.3a and 3d). In addition, the petitioner asserts that the trial judge should not have ordered him to wear shackles during the trial (Claim No.3b).

Prior to trial, the petitioner filed a motion asking the judge to recuse himself, stating that the judge "is a potential witness for the State where the alleged victim is Assistant Public Defender Charles Bloodworth."[7] Docket Entry No.36-1 at pg.36. No further explanation was given to support the motion. This motion was denied. *Id.* at pg.39.

There is nothing in the record to suggest that the trial judge witnessed the petitioner assaulting an attorney. Nor can the petitioner point to anything specific in the record from which it could be inferred that the trial judge was biased against the petitioner for any reason. The state courts found no merit in this issue. Docket Entry No.36-9 at pgs.17-18. That finding does not offend federal law.

The petitioner contends that the trial judge also erred when

---

[7] According to the petitioner, Charles Bloodworth was his attorney at the arraignment and his preliminary hearing. *See* Docket Entry No.1 at pg.7.

he failed to recuse the prosecutor in this case for witnessing the same assault upon petitioner's attorney. First, the record does not contain any mention of a motion to recuse the prosecutor filed by the petitioner. As a consequence, it would be difficult to find that the trial judge erred for denying a motion that the petitioner has not produced for review. Second, the petitioner has failed to cite to any specific event in the record from which it could be inferred that a conflict arose with the prosecutor because of the alleged assault. For those reasons, the petitioner has failed to show that this claim has merit.

The petitioner argues that he was denied due process because he was shackled throughout the trial. At the hearing to discuss the petitioner's motion for new trial, the trial judge stated that "I don't specifically remember whether he had shackles on". Docket Entry No.36-4 at pg.35. There is no order in the record directing that the petitioner be shackled throughout the trial. Nor can it be gleaned from the record that the petitioner stood trial in shackles. In any event, there has been no showing that the alleged shackling was so intrusive as to infringe upon the petitioner's right to a fair trial. This claim, therefore, is also without merit.

### iii) Ineffective Assistance of Counsel

The petitioner's final claim is that his attorney was deficient for failing to request a jury instruction regarding

accomplice testimony (Claim No.1).

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. <u>McMann v. Richardson</u>, 379 U.S. 759, 771 (1970). To establish a violation of this right, the petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient and that the defense was prejudiced as a result of the deficiency. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Prejudice arises when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 466 U.S. 694. When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Mallett v. United States</u>, 334 F.3d 491, 497 (6th Cir. 2003).

The petitioner first raised this claim during his post-conviction proceedings. Because Demetris Grant was the petitioner's accomplice, the state courts found that counsel had in fact been deficient for failing to request an instruction relating to accomplice testimony. Docket Entry No.36-16 at pg.8. However, to sustain an ineffective assistance claim, the petitioner must also show that he was in some way prejudiced by counsel's failure to request such an instruction.

As noted above, there was more than ample proof presented that

corroborated Grant's testimony. Testimony from the victim and others, coupled with the physical evidence collected and the medical testimony regarding the victim's injuries, gave Grant's testimony a needed degree of reliability. For that reason, the petitioner has failed to show that he was prejudiced by his attorney's deficient representation. Consequently, this claim will not support an award of habeas corpus relief.

### R E C O M M E N D A T I O N

For the reasons discussed above, the undersigned finds that the petitioner has failed to state a claim upon which habeas corpus relief can be granted. Accordingly, it is respectfully RECOMMENDED that the Court deny the petitioner's amended application for writ of habeas corpus and dismiss the instant action.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See* United States v. Walters, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

E. Clifton Knowles
United States Magistrate Judge